**THE UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:26CR37 |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| v. | ) | **ORDER** |
| DWAYNE NIXON, | ) | |
| Defendant. | ) | |

On August 12, 2026, the Court sentenced Defendant Dwayne Nixon to 51 months. This order serves to supplement the Court's sentencing.

Initially, the Court notes that both the Government and Nixon agree that the Court properly calculated his advisory guideline range to be 27 to 33 months. Specifically, Nixon's base offense level was found to be 14, and he received a two-level reduction for acceptance of responsibility. With a final offense level of 12 and a criminal history category of V, Nixon's advisory range was found to be 27 to 33 months. Ultimately, the Court varied up and sentenced Nixon to 51 months' incarceration.

The Court will now provide greater detail on why it imposed an upward variance. The Court is mindful that "[t]he greater the variance [from the guidelines], the more compelling the justification must be." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). "While [there is no] form of strict proportionality review," *United States v. Robinson*, 669 F.3d

767, 775 (6th Cir. 2012), the Sixth Circuit does "require some correlation between the extent of a variance and the justification for it," *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008). With that backdrop in mind, the Court notes that it imposed a sizeable upward variance above the high end of Nixon's advisory guideline range.

As the Court described during the hearing, much of the variance imposed resulted from Nixon's criminal history, including myriad offenses that were properly not scored in his criminal history category calculation. Nixon began his involvement with the criminal justice system at age 14 when he was adjudicated delinquent based upon charges of disorderly conduct and resisting arrest. Before reaching the age of 18, Nixon had **ten more** juvenile adjudications. They cases included five separate menacing charges, two additional charges of disorderly conduct, one charge of criminal damaging, and one charge of theft. At 17, and still adjudicated as a juvenile, Nixon graduated to more significant charges including receiving stolen property, a first-degree misdemeanor, felonious assault, a second-degree felony, and two counts of robbery, third-degree felonies.

Nixon's 11 separate encounters with the juvenile justice system did not serve to deter him. Instead, at age 18, Nixon had **five** more cases brought against him. The first four matters involved misdemeanor theft. However, Nixon's final case involved aggravated robbery with a firearm. For that final conviction, Nixon received a five-year sentence. Nixon's offense involved him setting up a meeting with a man to whom Nixon had arranged to sell a cell phone. Rather than complete the sale, Nixon pulled a gun from his pants, pointed it at the victim, and robbed him of his cell phone. Near the end of his prison time, in February of 2026, Nixon threatened to kill an officer after his release and possessed drug paraphernalia.

Nixon's conduct at the end of his time of incarceration was the culmination of his horrific conduct in custody. On **seventeen** different occasions, Nixon through fluid at officers that was identified as urine mixed with feces. During one incident, Nixon masturbated in front of a nurse that was attempting to treat him. On two other occasions, he spit on or at officers, including spitting in one officer's face. Nixon was also cited for fighting five times and cited three times for assaulting another inmate. Notably, the instant offense occurred on July 10, 2025, while he was under post-release control from his five-year sentence and only roughly 18 months after his release. As a result, he was returned to custody in the state court for violating the terms of his release.

Based upon those facts, the Court found that a substantial upward variance was necessary as it is apparent that Nixon's prior five-year sentence did nothing to deter him. Nixon, however, contends that this Court improperly weighed his criminal history when imposing his sentence and failed to fully consider his mitigating circumstances. The Court cannot agree with these assertions.

Initially, the Court acknowledges that Nixon's criminal history drove much of the variance in this matter. Moreover, contrary to Nixon's contentions, his criminal history is not fully accounted for by his criminal history category. Nixon's eleven juvenile offenses do not score in any manner. Moreover, while Nixon's five adult convictions count toward his criminal history category, neither that category nor Nixon's advisory guideline range account for how quickly those convictions were accumulated. Nixon accrued all five adult convictions within a six-month period of time. His initial adult convictions only serve to demonstrate that Nixon has refused, over and over again, to be deterred by court sanctions.

Perhaps most disturbing is the manner in which Nixon's conduct as an adult escalated. On August 12, 2018, Nixon grabbed a victim's iPhone and ran off. On November 15, 2018, Nixon responded to an ad for the sale of an iPhone. He met the seller in a parking lot and once again grabbed the phone and ran off. On December 19, 2018, Nixon again met his victim through a purported sale of a phone. This time, Nixon pretended to sell a phone for $250. Upon receiving the money, Nixon fled with it and the phone. Nixon paused long enough to flip off his victim while running away. Nixon repeated this behavior on January 26, 2019. This time, Nixon met the victim at a restaurant. When the victim placed money for the phone on the counter, Nixon grabbed it and once again ran off. Between these final two thefts, on January 1, 2019, Nixon utilized the same scheme. However, on this occasion, he pulled a gun from his pants and pointed it at his victim to secure his theft. That significant escalation raises substantial concerns about the path that Nixon finds himself on.

The Court would also note that Nixon's residence was searched for a firearm because an individual that resembled him was seen on a doorbell camera. That camera footage showed four masked individuals entering a residence on June 23, 2025. Police responded to that residence and found a female victim that had been shot five times. While Nixon was never affirmatively linked to any crime related to that shooting, he was found just a short time later with a loaded firearm that had a bullet chambered and additional ammunition in the magazine.

Based upon the above, the Court believes that its upward variance accurately reflects accounts for Nixon's history and characteristics. Further, the Court does not believe that undue weight was given to Nixon's past criminal conduct. Unfortunately for Nixon, but since the age of 14, he has little else to show *other* than criminal conduct.

Finally, contrary to Nixon's assertions, the Court did not ignore or discount the arguments he raised in mitigation. In his acceptance of responsibility, Nixon asserted that he had a difficult youth that was marked by instability, violence, and physical and emotional abuse. He also asserts that he has long-standing mental health issues, a marijuana addition, and has battled long-term depression that including an attempt to take his own life. In imposing sentence, the Court took these factors into consideration. However, they are substantially outweighed by Nixon's criminal conduct and his conduct while incarcerated.

Even if this Court were to find that some of Nixon's conduct was driven by his difficult upbringing and mental health issues, Nixon cannot rely on that excuse for his continued misconduct while in the controlled environment of prison. Even with rules in place and some form of stability, Nixon could not conform his actions to acceptable conduct. Instead, he through urine and feces at guards over and again, masturbated in front of a nurse who was trying to help him, and consistently fought with or assaulted other inmates. In other words, rather than use his time in prison to better himself, Nixon continued to engage in deplorable conduct.

In his letter accepting responsibility, Nixon asserts that he is committed to breaking his cycle of poor decisions and criminal conduct. The Court is hopeful that Nixon is true to his word and takes advantage of the programs and counseling that will be available to him during his period of incarceration. However, for all the reasons stated above, Nixon will need the 51 months imposed by the Court to change his conduct and re-enter society as a law-abiding citizen.

Based upon the facts set forth above, the Court found that a sentence within the advisory guideline range of 27 to 33 months was *insufficient* to offer adequate deterrence and protect the public. A previous 5-year sentence had almost no deterrent effect on Nixon, and he continued to engage in high-risk behavior while incarcerated. Accordingly, the Court finds that 51 months'

incarceration is a sufficient, but not greater than necessary, sentence for Nixon. The remaining terms of Nixon's sentence were set forth in open court and in his final judgment entry and will not be restated herein.

IT IS SO ORDERED.

Dated: August 27, 2026

*/s/ Judge John R. Adams*________
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT